Memorandum of Decision
In this court's March 26. 1999 decision in this case, familiarity with which is assumed, this court found statutory grounds to terminate the parental rights of Michelle B. to her daughters, Brittany M. and Shaquanna M., but deferred ruling on the disposition of the termination petitions and the petitions to revoke the commitments pending a hearing on recent developments that had taken place in the case. On April 21, 1999, this court conducted an evidentiary hearing on these developments. For the reasons stated below, the court now dismisses the termination petitions and denies the revocation petitions.
FACTS
The April 21 evidentiary hearing established the following facts. As of mid-March, 1999, Brittany remained at the Connecticut Children's Place, which she had entered in late October, 1998. On March 11, 1999, DCF removed Shaquanna, because of a disruption, from the foster home that she had entered in June, 1998. Several days later DCF placed Shaquanna in the Connecticut Children's Place.
On March 23, 1999, the mother, Michelle B., signed an agreement with DCF authorizing DCF to place Brittany and CT Page 4371 Shaquanna at the Kids Peace National Center for Kids in Crisis in Pennsylvania. The mother's consent was necessary because the placement was out of state. In the agreement, DCF pledged to allow the mother to have access to the therapists and intake specialists to provide any helpful history and background information and that she "will be kept informed concerning the girls [sic] progress and whereabouts."
On or about March 25, 1999, DCF transported the girls to Kids Peace. Kids Peace is a nationally-recognized center that provides a broad range of services and facilities for children with many different types and levels of behavioral problems. The facilities include a hospital, residential campuses, specialized community dwellings, diagnostic units, shelters, special and regular schools, outpatient clinics, and developmental and therapeutic recreation centers. The center will work with a child as long as necessary, until the child reaches age eighteen, to address his problems. Connecticut children whom DCF has placed there have stayed an average of nine to twelve months.
As of the April 21 hearing in this case, Brittany was in a Kids Peace diagnostic assessment center. DCF's goal for her is placement in a residential treatment facility. Shaquanna was in a residential treatment facility at Kids Peace with a long-term goal of placement in a permanent foster home or adoption. In response to DCF's request, Brittany and Shaquanna are on the same campus and see each other at some meals.[2]
DCF and the guardian ad litem for the girls continue to support termination of the mother's rights and oppose all contact between the mother and the two girls. The attorney for the girls opposes termination but favors continued commitment. The mother opposes termination but no longer vigorously presses for revocation.
DISCUSSION
At issue here is whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." General Statutes § 17a-112 (c)(2). In addition, the court must resolve the petitions to revoke the commitments. The mother has the burden of proving by a preponderance of the evidence that the cause for commitment no longer exists. If she meets this burden, then DCF must prove by a preponderance of the evidence that it would not be in the best interest of the child CT Page 4372 to be returned to the mother. See In re Thomas L.,4 Conn. App. 56, 57 (1985); Practice Book § 33-10.
One of the usual bases for termination, to free a child up for adoption, is no longer immediately present. Brittany has not been adoptable throughout the long course of this trial. The testimony during the first phase of the trial revealed that Shaquanna was adoptable, but she has now had a setback and is out of foster care. DCF now identifies adoption as only one of two long-term goals for Shaquanna, the other goal being permanent foster care. Thus the possibility of adoption does not provide a clear basis for termination at this time.
The other possible reason for termination in this case is the emotional stability it might provide by allowing the girls to put their troubled past behind them. Although DCF presented therapeutic testimony to this effect, that testimony was presented only in the initial portion of this trial, approximately six months ago, and focused largely on placements that the girls are no longer in. Because of the fitful lives that these girls have led and the recent change in their status, this court cannot clearly and convincingly find that the testimony regarding the importance of severing the mother's ties is still valid. The girls have been at Kids Peace for only a short time and the staff at Kids Peace is still making initial assessments. The staff at Kids Peace, which is essentially a neutral and independent group of evaluators, may well conclude that termination is not necessary and that some form of relationship with the mother may be helpful. This possibility is especially realistic for Brittany, who has consistently expressed a desire to see her mother.[3]
Under these circumstances, this court cannot clearly and convincingly conclude that termination is in the best interests of Brittany or Shaquanna. On the other hand, the current uncertainty arid the positions of the parties in this case make the court unable to find that the cause for commitment no longer exists. Accordingly, these girls should remain in DCF custody at least until the current commitment expires on July 27, 1999.
CONCLUSION
For the foregoing reasons, the petitions to terminate the parental rights of Michelle B. to Brittany M. and Shaquanna M. are dismissed. The petitions to revoke their commitments are CT Page 4373 denied.
It is so ordered.
Carl J. Schuman Judge, Superior Court
[2] Reports from Kids Peace concerning Shaquanna state that "parental rights are terminated." Obviously, this statement is only half true. Shaquanna's father, Terrance M., has consented to termination, but this court has not terminated the mother's rights and today decides not to do so. This court requests that DCF notify Kids Peace of this court's decision so that Kids Peace may correct its records with regard to both Shaquanna and Brittany as well as consider whether the fact that the mother's rights have not been terminated may have any therapeutic importance.
[3] Indeed, the placement agreement that DCF signed seems to commit DCF to allowing the mother to have some continuing role by pledging that the mother "will be kept informed as to the girls [sic] progress and whereabouts." Although DCF argued in court that this agreement pertained only to the initial phase of the girls' placement at Kids Peace, the agreement, by which DCF is bound, is not so limited.